UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONIKA SCHWAB,

    Plaintiff,

v.

CITY OF JACKSON, et al.,

    Defendants.

                               /

TERRENCE HILL,

    Plaintiff,

v.

CITY OF JACKSON, et al.,

    Defendants.

                               /

Case No. 2:14-cv-11074
Case No. 2:14-cv-11072

HONORABLE STEPHEN J. MURPHY, III

**AMENDED OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [52] AND GRANTING
SUMMARY JUDGMENT TO PLAINTIFF ON DEFENDANT'S COUNTERCLAIM [5]**

The case concerns the efforts of the City and County of Jackson to removed blighted homes and the claims of Monika Schwab, a woman who bought one of those homes. Many of Schwab's claims have already been resolved. Now before the Court is the County's motion for summary judgment. The Court held a hearing and will grant the motion for the reasons stated below.[1]

**BACKGROUND**

---

[1] The Court resolved the motion in a previous order. *See Schwab v. City of Jackson*, 2:14-cv-11074, ECF 62. That order, however, misstated the status of the City of Jackson's Building Code Board of Examiners and Appeals. This amended order corrects the misstatement, while retaining the Court's original conclusion.

The Court's previous order laid out most of the underlying background in the case and need not be repeated here. *See* Order 2–8, ECF 44. Only a brief recitation of the chronology is necessary.

In 2011, 1045 South Jackson St. (the Property) was subject to a tax foreclosure and in 2012, title vested in the Jackson County Treasurer pursuant to the General Property Tax Act (GPTA).

In January 2012, the City of Jackson condemned the Property and a few days later, the City served the County a Notice and Order. The Notice explained that the home was condemned and ordered the County not to transfer the property or structure to another person without first giving notice to the buyer and filing an "Affidavit of Disclosure." The affidavit was to confirm "that the new owner has been advised of and will fully accept and comply with outstanding code violations." Notice and Order, ECF 28-3.

In May 2012, the Board of Examiners held a hearing on the Notice and upheld it. The County did not appeal the decision.

In August 2012, the County published a notice in the local newspaper, announcing a public auction of several parcels, including the Property. After seeing the notice, Schwab visited the Property and attended the auction on September 27, 2012. She purchased the Property at the auction and received a quit claim deed from the County Treasurer on October 25, 2012. The County did not provide notice to Schwab before her purchase that the City had condemned the building on the Property.

During November of 2012, Schwab sought building permits to make repairs to the home, but was unsuccessful.

In February 2013, the City slated the house on the Property for demolition and on February 18, 2013, it demolished the house.

## STANDARD OF REVIEW

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if its resolution would establish or refute an "essential element[] of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the Court must view the facts and draw all inferences in the light most favorable to the non-moving party. *Stiles ex rel. D.S. v. Grainger Cnty., Tenn.*, 819 F.3d 834, 848 (6th Cir. 2016). At the summary judgment stage, the judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (quoting *Anderson*, 477 U.S. at 249). But a mere "scintilla" of evidence is insufficient to survive summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## DISCUSSION

Both the State of Michigan and the City of Jackson have provisions addressing dangerous structures that are subject to demolition. Michigan law controls how an owner is to be notified that its property may be condemned and when the owner is entitled to a

hearing. *See* Mich. Comp. Laws §§ 125.540 & 125.541. Additionally, a City of Jackson ordinance establishes a method for the City to eliminate blight and creates safeguards to protect unsuspecting buyers. *See* City of Jackson, Code of Ordinances, Pt. II, Ch. 17, Nuisances, Art. II(c)-(d), ECF 27-21. Under the ordinance, the City can require an owner to repair blighted property. The ordinance also provides that if the owner of a condemned building wishes to sell or transfer the property, it must first make any repairs required by the City or inform the buyer that the building is dangerous. The City referenced that ordinance in the Notice it served upon the County. ECF 28-3.

There is no dispute that the County did not take the actions listed in the City ordinance. After the Property was foreclosed upon, title eventually vested in the County, and it became the owner of the Property, albeit involuntarily. But the County then sold the Property to Schwab, without informing her of the previous Notice and Order and without obtaining from her an affidavit of understanding.

The County argues that its non-compliance is of no consequence because the County is not bound to follow the City's ordinance. And it concludes that absent a duty to comply with the ordinance, there can be no due process violation. The Court will address its arguments in support below.

I. <u>Enforceability of the City ordinance against the County</u>

The County argues that "the City of Jackson's ordinance is not applicable or enforceable against Jackson County or the Jackson County Treasurer for properties involuntarily held under the [General Property Tax Act]," and therefore "those same ordinances cannot form the basis of a due process violation claim against the County." Mot. Summ. J. 16, ECF 52.

4

The City of Jackson is a "Home Rule City" and thus bound by the Michigan Home Rule City Act, Mich. Comp. Laws § 117. Under the Act, a city "may establish an administrative hearings bureau to adjudicate and impose sanctions for violations of the charter or ordinances designated in the charter or ordinance as a blight violation." *Id.* § 117.4q(1). The Act lays forth the powers and procedures for those bureaus, but also explicitly notes that it "does not authorize a proceeding against a foreclosing governmental unit as defined under section 78 of the general property tax act[.]" *Id.* § 117.4q(3).

The County relies upon section 117.4q(3) to argue that the City's ordinance is unenforceable against the County. The reliance is misplaced because 117.4q(3) does not apply here. Although the Jackson County Treasurer is a foreclosing governmental body under the General Property Tax Act, the City of Jackson's Building Code Board of Examiners and Appeals ("Board of Examiners") is not an "administrative hearings bureau" created under the Home Rule City Act. Instead, it is a board of appeals created pursuant to the Housing Law of Michigan. *See* Mich. Comp. Laws § 125.541c. And although home rule cities are permitted to designate certain ordinance violations as "blight violation[s] in accordance with section 4q of the home rule city act," *id.* § 125.541b(2), the City of Jackson has not done so. Thus, the Home Rule City Act's prohibition on proceedings against foreclosing governmental bodies does not necessarily preclude a similar proceeding initiated by a board of appeals created under the Housing Law of Michigan.

Even if section 117.4q(3) did bar the Board of Examiners from bringing a proceeding against the Jackson County Treasurer, this would not resolve whether the County is nonetheless bound to follow the City's ordinance. Rather, by its terms, section 117.4q(3) would only preclude the Board of Examiners from authorizing a proceeding against the

5

County. Thus, the County could still violate the ordinance, even though the Board of Examiners would be powerless to bring an action against it. And the statutory limit placed upon the Board of Examiners would not necessarily immunize the County from a suit brought by a private party — here, Monika Schwab — arising out of a violation of the ordinance.

The County argues otherwise and directs the Court to *City of Jackson v. Jackson County Treasurer*, a case that arose in the Jackson County Circuit Court. ECF 52-9. The case is inapposite. There, a bureau created under the Home Rule City Act — the Administrative Hearings Bureau — found that a portion of the Act was unconstitutional. The circuit court judge overruled the Board's ruling because it was "in excess of the authority conferred it by the Home Rule Cities Act[.]" *Id.* at 2. No other question was addressed in that case, and the judge made that point clear. *See id.* ("The only question before the Court is whether the Administrative Hearings Bureau Hearing Officer has the authority to rule a state statute unconstitutional."). Here, no hearings bureau has made a constitutional ruling, so the case provides little guidance.

The County also argues that it is statutorily restricted from complying with the ordinance's requirement that owners pay for rehabilitation and repair of properties. The County concludes that it therefore has no obligations under the ordinance. The County explains that the General Property Tax Act "only provides the County with authority to 'maintain' properties," and only permits the County to expend "repair" costs for "environmental remediation." Mot. Summ. J. 14–15, ECF 52 (quoting Mich. Comp. Laws 211.78m(8)(e)) (internal quotation marks omitted). Moreover, the County notes that it held the Property "involuntarily" and cites a Michigan Court of Appeals case for the proposition

6

that it cannot be compelled to comply with the ordinance as an involuntary owner. *See* Mot. Summ. J. 10–11, ECF 52 (citing *Harbor Watch Condo Ass'n v. Emmet Cty. Treasurer*, 308 Mich App. 380 (2014)).

In *Harbor Watch*, the plaintiff condominium association was demanding that the defendant county pay association fees for the general maintenance of a condominium community. Pursuant to the bylaws of the condominium association and Michigan's Condominium Act, all property owners were required to pay fees. The County came to own several condominiums through foreclosures, but argued that, as an involuntary owner, it had no contractual obligations to pay the fees, and even if it did, the GPTA did not authorize the County to pay the fees. *See id.* at 382–83. The Court of Appeals held that, as an involuntary owner, the County was not obligated to pay the assessments. *Id.* at 385. The Court also held that because the GPTA did not authorize the County to pay condominium assessments, the County could not be compelled to perform an ultra vires act. *Id.* at 388.

Under *Harbor Watch*, the Defendant is correct that it cannot be compelled to comply with the ordinance's repair and rehabilitation mandate. But *Harbor Watch* did not address disclosure obligations. Compliance with ordinance's obligation did not require it to expend funds, but merely to inform buyers of certain liens on the property. The reasoning and holdings of *Harbor Watch* do nothing to mitigate that obligation. Accordingly, the County has not shown that, as a matter of law, it is immune from the disclosure requirements of the City of Jackson's ordinance.

Even so, the County argues that there was nothing to disclose, because at the time of the sale to Schwab, there were no active liens. Under the GPTA, when a foreclosing

governmental unit (such as the County) takes title to a property, "all liens for costs of demolition, safety repairs, debris removal, or sewer or water charges due on the property as of the December 31 immediately succeeding the sale, transfer, or retention of the property are canceled effective on that December 31." Mich. Comp. Laws 211.78m(12). According to the County, after December 31, 2012, the liens were canceled and its liability — to the extent it existed — ended.

That argument is also unavailing. The County took title through foreclosure in 2012. Under the GPTA, liens for the cost of demolition and repair were canceled as of December 31, 2012. But the County sold the property to Schwab prior to December 31, 2012 — thus, any liens were still in place at the time of the sale, when the County was required to make its disclosure. Moreover, the ordinance's disclosure requirement is not contingent on the existence of a lien. Rather, the ordinance makes it unlawful to sell the property without first complying with the notice and order or furnishing the buyer with a true copy of the notice and order and furnishing the building official with a signed and notarized statement from the buyer acknowledging the receipt of the notice and order and accepting full responsibility for the requirements within it. Jackson Ordinance § 17-27(l). Nothing in the ordinance's requirement is contingent upon whether the lien remains in effect.

The County did not comply with the disclosure requirement of the ordinance. The County has not shown that it had no obligations under the ordinance and it has not shown that it is immune from liability for non-compliance. But mere wrongdoing is not enough to prevail on a due process claim, so the Court must now evaluate the merits of Schwab's claims.

II.    <u>Due Process Under the 14th Amendment</u>

Schwab's Complaint alleged three counts against the City and County: violation of procedural due process, violation of substantive due process, and violation of equal protection — all under the 14th Amendment of the United States Constitution and Article 1, Section 17 of the Michigan Constitution. Compl. 5–8, ECF 1. In a previous order, the Court dismissed the equal protection claim against the County. *See* Order, ECF 21. Later, the Court granted the City's Motion for Summary Judgment on all three counts. Order, ECF 44. In that order, the Court explained the requirements to prevail on a claim for substantive due process — namely, that the governmental entity's actions must have been arbitrary or conscience-shocking. *See* Order 19–20, ECF 44 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)). The Court determined that the City has "an important interest in demolishing abandoned and vacant homes" and that the City's actions concerning Schwab's house did not constitute a substantive due process violation. *Id.*

The same reasoning applies to the County's actions. The County's failure to provide notice to Schwab as required by the ordinance was neither conscience-shocking nor arbitrary. At oral argument, the County explained that it faced practical constraints in complying with the statute. Although their reasons fail to immunize the County against any blame, they do preclude a finding of arbitrariness. *See Cty. of Sacramento*, 523 U.S. at 848 (explaining that "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm"). Simply put, the County's noncompliance with the ordinance did not violate Schwab's substantive due process rights.

This leaves only Schwab's procedural due process claim. Under the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due

9

process of law." U.S. Const. Am. XIV. "[T]o establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

The County sold Schwab a property without complying with the ordinance's disclosure requirement. In doing so, it functioned as a seller — nothing more. Schwab received the property she bid upon. The City demolished her house after according due process to the party entitled to it: the County. Schwab has not shown that the County deprived her of any property interest by its failure to comply with the ordinance's disclosure requirement. The Court will therefore award summary judgment in favor of the County.

III. <u>The City's Lingering Counterclaim</u>

In its answer to the complaint, the City filed a counterclaim for the costs associated with demolishing Schwab's house. ECF 5. The City later filed a motion for summary judgment on the counterclaim. ECF 27. The Court denied the motion, and explained that it was "inclined to dismiss the counterclaim against Schwab" but did not "because Schwab has not filed a motion for summary judgment on the issue." Order 13 n.2, ECF 44. Nonetheless, the Court finds that the City's counterclaim fails to raise a genuine dispute of material fact, and will therefore grant summary judgment in Schwab's favor sua sponte. *See Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 932 (6th Cir. 2000) (recognizing that a district court may grant summary judgment to a nonmoving party sua sponte where the parties had fully briefed the determinative issue and there is no factual dispute).

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment [52] is **GRANTED**.

**IT IS FURTHER ORDERED** that summary judgment on Defendant's counterclaim [5] is **GRANTED** in favor of Plaintiff.

**IT IS FURTHER ORDERED** that the case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 15, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 15, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager